**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

O2 MEDIA, LLC, a Delaware limited
liability corporation,

        Plaintiff,

v.

NARRATIVE SCIENCE INC., a Delaware
corporation,

        Defendant.

JURY TRIAL DEMANDED


No. _____

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff, O2 MEDIA, LLC d/b/a Fresh Brewed Media ("FBM" or "Plaintiff"), a Delaware limited liability corporation, by and through its attorneys, against Defendant, NARRATIVE SCIENCE INC. ("NS" or "Defendant"), states its Complaint and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

### Parties

1.     Plaintiff is a corporation incorporated in the State of Delaware. Plaintiff does business as Fresh Brewed Media and has a principal place of business at 413-A East Main Street, Charlottesville, VA 22902.  Plaintiff is a holding company that publishes websites for investors and licenses content to institutional clients like Standard & Poors, Fidelity, TD Ameritrade, NASDAQ.com and CBOE, among others. FBM operates the websites www.investorsobserver.com, www.marketintelligencecenter.com and www.fbmnews.com as well as the publication the *Options Strategies on Market Scope Advisor (S&P Capital IQ).*

2.      Upon information and belief, Narrative Science Inc. ("NS") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 303 East Wacker Drive, Suite 1500, Chicago Illinois 60601.  NS also has offices in Washington, D.C. and New York and at a minimum markets its goods and services using the website www.narrativescience.com.

3.      Upon information and belief, Defendant conducts business from the website www.narrativescience.com in the United States and in this jurisdiction.  This website is accessible from anywhere in the United States, including this district.

### Jurisdiction

4.      This action arises under the patent laws of the United States, 35 U.S.C. § 1 et seq. and more specifically under 35 U.S.C. § 271 et seq.  Plaintiff seeks injunctive relief and actual damages, including Defendant's profits and Plaintiff's costs and attorneys' fees under 35 U.S.C. §§ 284, 285 and 289.  This court has jurisdiction over the matters raised herein pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

### Venue

5.      Venue in this judicial district is proper under 28 U.S.C. §§ 1391(b), (c) and/or 1400(b). Defendant has entered, and is currently in, this district promoting and selling its products and services, a substantial part of the events giving rise to the claims that occurred in this district.  Defendant also has its corporate headquarters within this district and is therefore subject to the venue of this Court.

### PLAINTIFF'S RIGHTS

6.      Plaintiff is the sole owner and assignee of U.S. Patent Nos. 7,856,390, 8,494,944 and 8,676,691.

7.      U.S. Patent No. 7,856,390 is titled System, Report, and Method for Generating Natural Language News-based Stories ("the '390 patent"), which was issued by the United States Patent and Trademark Office (the "USPTO") on December 21, 2010. The '390 patent was filed on June 5, 2008 as U.S. Application No. 12/134,007, having a priority of June 6, 2007 and was based on U.S. Provisional Application No. 60/942,356.  A copy of the '390 patent is attached hereto as <u>Exhibit A</u> and incorporated by reference herein.

8.      U.S. Patent No. 8,494,944 is also titled System, Report, and Method for Generating Natural Language News-based Stories ("the '944 patent"). The '944 patent was issued on July 23, 2013 as a continuation-in-part of Application No. 12/134,007, filed on June 5, 2008 and now the '390 patent.  The '944 patent also has a priority date, in regards to at least one of its claims, of June 6, 2007. A copy of the '944 patent is attached hereto as <u>Exhibit B</u> and incorporated by reference herein.

9.      U.S. Patent No. 8,676,691, the third in the family, is also titled System, Report, and Method for Generating Natural Language News-based Stories ("the '691 patent"), which was issued by the USPTO on March 18, 2014. The '691 patent was issued as a continuation-in-part of Application No. 12/973,576 (the '944 patent), which in turn was a continuation-in-part of Application No. 12/134,007 (the '390 patent).  The '691 patent also has a priority date, in regards to at least one of its claims, of June 6, 2007.  A copy of the '691 patent is attached hereto as <u>Exhibit C</u> and incorporated by reference herein.

10.      The '390 patent, the '944 patent, and the '691 patent (collectively, the "Patents-in-Suit") are valid and enforceable at least until 20 years from the date of filing, or around June 5, 2028.

3

11.     Plaintiff offers multiple services directly to clients, or via its websites at www.investorsobserver.com, www.marketintelligencecenter.com, www.fbmnews.com, and via other publications like the *Options Strategies on Market Scope Advisor (S&P Capital IQ).* Plaintiff offers services to clients which are also covered or relate in whole or in part to the Patents-in-Suit.

## CLAIM

### Patent Infringement Pursuant to
### § 271 of the Patent Act (35 U.S.C. § 271)

12.     Plaintiff adopts, restates and realleges each and every allegation previously set forth in this Complaint as if fully set forth in this Paragraph 12.

13.     35 U.S.C. § 271 of the Patent Act provides, in relevant part:

*(a) Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.*

*(b) Whoever actively induces infringement of a patent shall be liable as an infringer.*

*(c) Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.*

14.     Upon information and belief, Defendant, without permission or license from Plaintiff, has unlawfully and wrongfully created a data-driven communications software application at machine scale power by artificial intelligence.  This software is named Quill™. Quill is offered in multiple industries, including financial services, government, staffing

CHICAGO/#2710787.2

services, marketing services and sports. Several applications are also sold in commerce and include, for example, Quill Engage™ and Quill Connect™.

15. Quill is a product that uses methods that are performed according to the proprietary and patented methods owned by Plaintiff. Quill is sold or offered for sale by Defendant in the United States and within this district, and clients who implement or use Quill also use or perform the methods proprietary and patented by Plaintiff.

16. Plaintiff at a minimum offers services and performs proprietary and patented methods in the financial services industry. Defendant as to part of its services is believed to be in direct competition with Plaintiff, as it offers methods in the financial services industry.

17. Quill is a software that offers users a computer interface allowing a user to select a portfolio of financial instruments and offering a choice between generating a strategies page or a news stories page in which the news stories are produced in a patented way to generate natural language news-based stories. A copy of the webpage describing Quill is attached hereto as Exhibit D. Quill, when used in some or all of its possible ways, produces and performs methods that infringe the methods covered in the Patents-in-Suit (the "Infringed Methods").

18. Upon information and belief, Defendants offer Quill to potential clients of Plaintiff, and allow third parties to perform the Infringed Methods in violation of Plaintiff's exclusive rights thereunder and to a great loss and immediate and irreparable injury to Plaintiff either via direct infringement, and/or contributory infringement by providing an instrument to a third party knowing the methods will be performed.

19. In an effort to settle this matter amicably, Plaintiff gave actual notice of ownership of the Patents-in-Suit to Defendant on March 25, 2015. Defendant has refused to license Plaintiff's technology and has ignored all common sense warnings and continued

infringing the rights of Plaintiff. Plaintiff strongly believes that the ongoing and continued sale and offering of Quill, which performs the Infringed Methods, infringes the rights of Plaintiff and is willful, reckless and in disregard of the law.

20. Furthermore, upon information and belief, at least the '390 patent was cited as prior art to one or more of Defendant's own U.S. Issued Patents covering technology embodied within Quill. Upon information and belief, Defendant has sold or offered to sell, continues to sell or offer to sell, and has unlawfully imported into the United States products that infringe the methods of Plaintiff for Defendant's own benefit, including regular sales of contracts using the infringing methods within this judicial district, in direct violation of Plaintiff's exclusive rights under the Patents-in-Suit.

21. Upon information and belief, the Infringed Methods are performed directly by Defendant, and/or by software used by Defendant or its clients, resulting in direct infringement, contributory infringement, or vicarious infringement of at least one claim, namely claim 1 of the '390 patent.

22. Upon information and belief, Defendant's entire business model is built on, and Defendant profits exclusively or at least in part from, the aforesaid infringement of the '390 patent and of the other Patents-in-Suit. Defendant sells software designed to secure gains, profits and advantages, including gains, profits and advantages from regular sales of contracts generated by the Infringed Methods owned by Plaintiff within this judicial district in amounts to be proven at trial. In at least the field of financial services, Plaintiff and Defendant are direct or indirect competitors offering alternative services to the same clients, and therefore sales by Defendant directly damage the actual or potential sales of Plaintiff.

23.     As a direct and proximate result of the aforesaid infringement, Plaintiff has been and will be greatly damaged and has been and will be deprived of and prevented from receiving, if such further infringement is not restrained and enjoined by this Court, all the gains and profits to which Plaintiff is lawfully entitled and that it would have derived and received but for the aforesaid infringement by Defendant.

24.     Upon information and belief, Defendant has actual and constructive notice of Plaintiff's rights respecting the patented technology.

25.     Upon information and belief, Defendant's infringement is willful and the decision not to stop infringing the Infringed Methods is in egregious disregard of the law.

## COUNT I

## Uniform Deceptive and Unfair Trade Practices Act 815 ILCS 510/2

26.     Plaintiff adopts, restates and realleges each and every allegation previously set forth in this Complaint as if fully set forth in this Paragraph 26.

27.     Section 510/2 of the Illinois Uniform Deceptive Trade Practices Act (the "UDTPA") provides, in relevant part that:

*A person engages in deceptive trade practices when, in the course of his business, location, or occupation, he:*

\* \* \*

*(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;*

\* \* \*

*(12) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.*

815 ILCS 510/2 (West 1998).

7

28.     Defendant has actual notice of the Patents-in-Suit owned by Plaintiff, but nevertheless advertises, offers, generates and sells a software which it knows clients believe is legal and does not infringe any third-party rights.  Those in the industry who know of Plaintiff and its patented methods, customers and/or third parties may be misled into thinking that Defendant's Quill software is produced under a valid license or does not infringe Plaintiff's technology, all in violation of Section 2 of the UDTPA.

29.     Upon information and belief, Defendant has willfully engaged in deceptive trade practices prohibited by Section 2 of the UDTPA, with the intent to trade upon the goodwill established by Plaintiff.

30.     By reason of Defendant's unlawful activities, Plaintiff has been and is likely to be damaged and unless Defendant's activities are restrained, Plaintiff will continue to suffer serious and irreparable injury without a full and adequate remedy at law.

## PRAYER

WHEREFORE, Plaintiff prays that this Court:

(a)     adjudge and decree that Defendant contracts as they are generated are infringing the methods covered in the Patents-in-Suit;

(b)     preliminarily and permanently enjoin, by reason of said acts of infringement and pursuant to 35 U.S.C. § 283, Defendant, its representatives, officers, directors, agents, servants, employees and attorneys, and any and all persons in active concert with them, from directly or indirectly making or causing to be made, offering for sale, selling or causing to be sold, or using or causing to be used any product in accordance with or embodying any invention(s) or method set forth and claimed in the Patents-in-Suit, including but not limited to the Infringed Methods and work product generated therewith;

(c)     order Defendant to account for all gains, profits and advantages realized from their manufacturing and marketing of work product built using the Infringed Methods resulting in infringement of the Patents-in-Suit and Defendant's unlawful use and practice of the invention(s) patented in and by the Patents-in-Suit from the beginning of marketing of the contracts built using the Infringing Methods, and other products or necessary accessories sold in connection therewith, and other products that infringe the Patents-in-Suit and accessories sold therewith, up to and including the time of trial;

(d)　　　order Defendant to pay to Plaintiff such damages as have been sustained by Plaintiff as a result of said infringement(s) by Defendant;

(e)　　　order a trebling of all damages awarded to Plaintiff pursuant to 35 U.S.C. § 284;

(f)　　　order that Plaintiff recover prejudgment interest from Defendant pursuant to 35 U.S.C. § 284 on damages awarded to Plaintiff;

(g)　　　order Defendant to pay to Plaintiff its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

(h)　　　order that Plaintiff recover all its other costs and disbursements that may be incurred by Plaintiff in this action;

(i)　　　order that Plaintiff have trial by jury on all issues so triable;

(j)　　　order Defendant, its representatives, officers, directors, agents, servants, employees and attorneys, and any and all persons in active concert with them, to fully compensate Plaintiff for the preparation and distribution of corrective advertising; and

(k)　　　award Plaintiff such other and further relief as this Court deems just and proper under the circumstances including available remedies under the UDPTA.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all triable issues.

Respectfully submitted,

O2 MEDIA, LLC.


By:　 s/ Alain Villeneuve
　　　　One of Its Attorneys

ANGELO J. BUFALINO
MICHAEL WATERS
ALAIN VILLENEUVE
VEDDER PRICE P.C.
222 N. LaSalle St., Suite 2600
Chicago, Illinois 60601
Telephone:      (312) 609-7500
Fax:      (312) 609-5005
abufalino@vedderprice.com
mwaters@vedderprice.com
avilleneuve@vedderprice.com

Attorneys for Plaintiff
O2 MEDIA, LLC