**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

O2 MEDIA, LLC,

    Plaintiff,

       v.

NARRATIVE SCIENCE INC.,

    Defendant.

Case No. 1:15-cv-05129

Honorable John J. Tharp

**NARRATIVE SCIENCE INC.'S MEMORANDUM IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
WITH PREJUDICE FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II.  THE ASSERTED PATENTS .................................................................................1

III.  ARGUMENT ..........................................................................................................5

    A.  PATENT ELIGIBILITY IS A THRESHOLD ISSUE. .......................................................5

    B.  PATENT ELIGIBILITY CAN BE DECIDED ON A MOTION TO DISMISS. ......................5

    C.  CLAIM CONSTRUCTION IS NOT REQUIRED TO DECIDE PATENT ELIGIBILITY. ..........6

    D.  ALL CLAIMS OF THE ASSERTED PATENTS FAIL THE SUPREME COURT'S
        PATENT ELIGIBILITY TEST. ....................................................................................7

        1.  All claims of the Asserted Patents are directed to the abstract idea
            of using a template to write stories about selected topics...........................7

        2.  The independent claims have no inventive concept to make them
            patent eligible. .......................................................................................10

        3.  The dependent claims also have no inventive concept to make
            them patent eligible. ...............................................................................13

    E.  O2 MEDIA'S STATE LAW COUNT ALSO FAILS TO STATE A CLAIM AND IS
        PREEMPTED. .........................................................................................................14

IV.  CONCLUSION .....................................................................................................15

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013) ................................................................................................ 11, 14

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) ........................................ *passim*

*Angle v. NW Mut. Life Ins. Co.*, 92 U.S. 330 (1875) ................................................................ 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................... 6

*Bancorp Servs., LLC v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266 (Fed. Cir. 2012) ................................................................................................................ 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................... 6

*Bilski v. Kappos*, 561 U.S. 593 (2010) ........................................................................ 5, 6, 9, 13

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141 (1989) .................................. 15

*Cardpool Inc. v. Plastic Jungle, Inc.*, No. C. 12-04182, 2013 WL 245026 (N.D. Cal. Jan. 22, 2013) ................................................................................................. 6

*Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, No. 6:12-cv-00951-LED, 2014 WL 923280 (E.D. Tex. Jan. 21, 2014) (Davis, J.) ............................... 6

*Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920 (2015) .............................................. 14

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014) ........................................................................... *passim*

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 Fed. Appx. 988 (Fed. Cir. 2014) ................................................................................................................. 9

*Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) ...................... 8

*Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012) .................................................. 9

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014) ................................................................................................................. 9

*Eclipse IP LLC v. McKinley Equipment Corp.*, No. SACV 14-742-GW, 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014) ................................................................... 6

*Enfish, LLC v. Microsoft Corp.*, 56 F. Supp. 3d 1167, 1173 (C.D. Cal. 2014) ...................... 7

*Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012) ........................................................5

*Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*, No. 12-1736-LPS-CJB, 2014
    WL 4379587 (D. Del. Sept. 3, 2014) ...................................................6

*Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363 (Fed. Cir.
    2015) ........................................................................................9

*Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015) ...................9, 12

*Market Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, No. 14 C 4957,
    2015 WL 3637740 (N.D. Ill. June 12, 2015) (Tharp, J.) ................................*passim*

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012)............. 1, 7, 12, 13

*Medicine, Inc. v. Elsevier, Inc.*, No. C-13-4479, 2014 WL 4966326 (N.D. Cal.
    Sept. 30, 2014) ........................................................................6

*Nabrzeski v. Dillon*, 1994 WL 395101 (N.D. Ill. July 27, 1994) ...................................9

*OIP Techs., Inc. v. Amazon.com, Inc.*, No. C-12-1233, 2012 WL 3985118 (N.D.
    Cal. Sept. 11, 2012) ...................................................................6

*Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-04843, 2014 WL 4684429
    (C.D. Cal. Sept. 19, 2014) .............................................................6

*Open Text S.A. v. Box, Inc.*, 78 F. Supp. 3d 1043, 1045 (N.D. Cal. 2015) .........................7

*Parker v. Flook*, 437 U.S. 584 (1978) ...........................................................13

*UbiComm, LLC v. Zappos IP, Inc.*, No. 13-1029, 2013 WL 6019203 (D. Del.
    Nov. 13, 2013) .........................................................................6

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014) (Mayer, J.,
    concurring)...........................................................................*passim*

*Versata Devel. Group, Inc. v. SAP Am., Inc.*, 793 F.3d 1306 (Fed. Cir. 2015)..........................6

*Yates v. United States*, 135 S. Ct. 1074 (2015) (Kagan, J., dissent) .............................8

**Statutes**

Section 101 of the Patent Act ..............................................................5, 6, 7

**Rules**

Rule 12(b)(6) .........................................................................5, 14, 15

Rule 12(c) ...............................................................................6, 7

## I.  INTRODUCTION

In its First Amended Complaint, plaintiff O2 Media, LLC pleads a patent infringement count, and an Illinois Uniform Deceptive Trade Practices Act count based on the alleged patent infringement.  (D.I. 8).  Defendant Narrative Science Inc. moves to dismiss both counts of the complaint with prejudice because they fail to state a claim upon which relief can be granted, and their deficiencies cannot be cured.  Specifically, the three patents O2 Media asserts in this action claim the abstract idea of using templates to write stories about selected topics.  In recent years, the Supreme Court has reemphasized the long-standing and fundamental principle that such abstract ideas are not subject to patent protection.  *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2357 (2014); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012).  As a result, O2 Media's asserted patents are invalid since they are directed to patent-ineligible subject matter.  Because this deficiency is fundamental to the patents, it cannot be cured by amending the complaint.  In addition, because the patents are invalid, they cannot form the basis of an Illinois Uniform Deceptive Trade Practices Act claim without violating the Supremacy Clause.  Accordingly, Narrative Science requests that the Court dismiss both counts of plaintiff O2 Media's First Amended Complaint with prejudice for failure to state a claim.

## II.  THE ASSERTED PATENTS

O2 Media's First Amended Complaint alleges that Narrative Science infringes U.S. Patent Nos. 7,856,390 ("the '390 Patent"); 8,494,944 ("the '944 Patent"); and 8,676,691 ("the '691 Patent") (collectively, "the Asserted Patents").  (D.I. 8).  Copies of the Asserted Patents are attached to O2 Media's First Amended Complaint.  (*See* D.I. 8-1; 8-2; 8-3).  The Asserted Patents are all related to each other[1], all have the same title, and all state their alleged invention

---

[1] The '390 Patent is the parent of the '944 Patent, which is the parent of the '691 Patent.

"generally relates to a system, report and method for automatically generating a series of natural language news-based stories to be presented via a digital interface or printed publication to a portfolio user." ('390 Patent, 2:58-61; '944 and '691 Patents, 3:24-27). However, none of the Asserted Patents provides any explanation of how to implement or design any software, algorithm or technology to generate the natural language news-based stories. Instead, each of the Asserted Patents speaks in terms of "what is contemplated." The Asserted Patents devote only a single figure to the claimed news-generating algorithm that is at the heart of the alleged invention, and describe it in no more detail than a black box labeled "software":



(Asserted Patents, Figure 3; *see also* '390 Patent, 6:3-7; '944 and '691 Patents 6:43-47).

Claim 1 of the '390 Patent, which is representative, recites:

1. A method for generating natural language news-based stories directed to financial instruments named in a portfolio, the method comprising the steps of:

selecting a portfolio of financial instruments using a computer interface; and

offering a choice on the computer interface between creating a strategies page or a news stories page produced from each of the financial instruments in the portfolio,

wherein the news stories page comprises a plurality of natural language news stories, each including a date of publication, a story rewritten in natural language using a template from a news brief with a news-generating algorithm with sentence and paragraph reconstruction to simulate natural language selected from a plurality of templates each with input variables and at least a data field, and a source of origin for the news brief.

2

As seen, this claim is focused on the abstract idea of using templates to write stories about selected topics (*i.e.*, financial instruments named in a portfolio). The Asserted Patents explain the templates are simple fill-in-the-blank templates.[2] ('390 Patent, 6:7-21; '944 and '691 Patents, 6:47-56). In addition, the computer interface limitations in the claim are standard interfaces that the Asserted Patents acknowledge were already "known methods." (*See, e.g.*, '390 Patent; 6:3-7; *see also id.* at 3:61-67 (describing that "any software interface" can be used.)).

Independent Claim 13 of the '390 Patent (which is the patent's only other independent claim) recites the same general concept but is drafted as a "system" instead of a "method," and thus also claims a "computer" that is "connected to [the] Internet" and that has "memory," "a central processing unit" and "software" (as all computers do).

The claims of the '944 and '691 Patents recite similar variations of this same concept. These patents, however, are not limited to the field of "financial instruments," but more generally purport to cover any "items of interest." (*See, e.g.*, '944 Patent, Claims 1, 5, 9). They also recite some additional, trivial limitations. For example, the independent claims of the '944 Patent generically recite how the "items of interest" are selected, *i.e.*, "using a management tool" that the patent describes as anything "known and contemplated." (*See, e.g.*, '944 Patent, Claim 1; 4:35-41). The '944 Patent's independent claims also include further, abstract and generic details about template-based story writing, claiming they are generated using "boilerplate sentences," which are "repeated in a round-robin method," and that terms within those sentences

---

[2] The Asserted Patents provide the following example of "one possible template," where a computer would fill in the information in brackets: "After hitting a one-year high of [52-week high] in [month and year], the stock has backed off [calculate variation adjective on parsed table] but bounced off the [52-week low] mark and has recently established support [$ value of support only if previous values more distant than $3, otherwise decimals]." ('390 Patent, 6:9-16; '944 and '691 Patents, 6:49-56). The Asserted Patents do not explain how the computer determines or fills in the information in brackets.

are "varied using a parsing table." (*Id.; see also* '944 Patent, Claims 5, 9). The '944 Patent does not provide any explanation on how to implement a "parsing table," but acknowledges a human could perform the "boilerplate sentences repeated in a round-robin method" and "parsing" functions that the patent's claims attribute to a computer. ('944 Patent, 6:28-33).

The independent claims of the '691 Patent are essentially the same as the '944 Patent except its claims do not include the "round-robin" limitation. (*See* '691 Patent, Claims 1, 5, 9). And like the '944 Patent, the '691 Patent provides no explanation on how to implement a "parsing table," and also acknowledges that a human could perform the "boilerplate" and "parsing" limitations. ('691 Patent, 6:28-33)

The dependent claims of the Asserted Patents merely add trivial limitations that fall into several categories: Many simply provide how the "financial instruments" or "items of interest" are selected, for example using a known, existing "management tool." (*See* '390 Patent, Claims 2, 5, 11, 12, 14, 18). Others merely limit the claims to a certain field, for example limiting the "financial instruments, "items of interest," "news briefs" and "news stories" to specific types or formats. (*See* '390 Patent, Claims 3, 4, 6, 7, 15, 17, 19, 20; '944 Patent, Claims 3, 4, 7, 8, 11, 12; '691 Patent, Claims 3, 4, 7, 8, 11, 12). Some add simple limitations such that the "news stories" form a "news report" or are generated by a system using a computer and the Internet (similar to Independent Claim 13 of the '390 Patent, discussed above). (*See* '390 Patent, Claims 8, 9, 10, 16). And the few remaining dependent claims simply provide further abstract, generic aspects about template-based story writing, for example, "removing irrelevant data" or "conforming dates for consistency," that the claims attribute to a generic computer but the patents acknowledge a human could perform. (*See* '944 and '691 Patents, Claims 2, 6, 10, & 6:28-33).

4

III.    **ARGUMENT**

Both counts of O2 Media's First Amended Complaint should be dismissed with prejudice under Rule 12(b)(6) for failure to state a claim.  The patent count should be dismissed because the Asserted Patents all claim abstract ideas that are not patent eligible.  The Illinois Uniform Deceptive Trade Practices Act count should be dismissed because it is preempted by the federal patent laws.  The patent eligibility issue is addressed first, followed by the state law issue.

A.    **PATENT ELIGIBILITY IS A THRESHOLD ISSUE.**

Patent eligibility is a threshold issue for O2 Media's case.  *See Bilski v. Kappos*, 561 U.S. 593, 602 (2010).  Section 101 of the Patent Act limits patentable subject matter to four categories: "any new and useful process, machine, manufacture, or composition of matter."  35 U.S.C. § 101.  The Supreme Court has repeatedly held that Section 101 contains an important exception to patentability: "Laws of nature, natural phenomena, and abstract ideas are not patentable."  *Alice,* 134 S. Ct. at 2354.  As this Court recently noted, the Supreme Court has held this rule in place for over 150 years "to prevent monopolization of the 'basic tools of scientific and technological work' that 'might tend to impede innovation more than it would tend to promote it,' thereby thwarting the primary object of the patent laws."  *Market Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, No. 14 C 4957, 2015 WL 3637740, at *2 (N.D. Ill. June 12, 2015) (Tharp, J.) (granting § 101 motion to dismiss on the pleadings; internal citations omitted).

B.    **PATENT ELIGIBILITY CAN BE DECIDED ON A MOTION TO DISMISS.**

Under Rule 12(b)(6), a complaint should be dismissed if it fails to state a claim upon which relief can be granted.  In deciding a Rule 12(b)(6) motion, courts may consider documents attached to or incorporated into the complaint and information subject to judicial notice, as well as facts alleged in the complaint.  *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir.

2012). Although factual allegations in the complaint are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Patent eligibility is a question of law, entirely for the court to decide. *See, e.g.*, *Versata Devel. Group, Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1331 (Fed. Cir. 2015).

The motion-to-dismiss stage is a particularly appropriate time to consider patent eligibility. As the Supreme Court has held, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (ellipses in original, quotation marks omitted); *see also Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 719 (Fed. Cir. 2014) (Mayer, J., concurring) ("resolving subject matter eligibility at the outset provides a bulwark against vexatious infringement suits"). Indeed, it has become common to decide patent eligibility based on the pleadings alone.[3]

## C.   CLAIM CONSTRUCTION IS NOT REQUIRED TO DECIDE PATENT ELIGIBILITY.

Claim construction is not required to conduct a patent eligibility analysis under § 101. *See Alice*, 134 S. Ct. 2347 (finding subject matter patent ineligible without performing claim construction); *Bilski*, 561 U.S. at 612-13 (same); *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (same); *Bancorp Servs.,*

---

[3] *See, e.g.*, *Market Track*, 2015 WL 3637740 (Tharp, J.) (granting § 101 motion to dismiss on the pleadings); *Medicine, Inc. v. Elsevier, Inc.*, No. C-13-1479, 2014 WL 4966326 (N.D. Cal. Sept. 30, 2014) (granting 12(b)(6) motion to dismiss and invalidating all claims of asserted patent as patent ineligible); *Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-04843, 2014 WL 4684429 (C.D. Cal. Sept. 19, 2014) (same); *Eclipse IP LLC v. McKinley Equipment Corp.*, No. SACV 14-742-GW, 2014 WL 4407592 (C.D. Cal. Sept. 4, 2014) (same); *Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*, No. 12-1736-LPS-CJB, 2014 WL 4379587 (D. Del. Sept. 3, 2014) (same); *UbiComm, LLC v. Zappos IP, Inc.*, No. 13-1029, 2013 WL 6019203, at *6 (D. Del. Nov. 13, 2013) (same); *Cardpool Inc. v. Plastic Jungle, Inc.*, No. C 12-04182, 2013 WL 245026, at *4 (N.D. Cal. Jan. 22, 2013) (same); *OIP Techs., Inc. v. Amazon.com, Inc.*, No. C-12-1233, 2012 WL 3985118, at *20 (N.D. Cal. Sept. 11, 2012) (same); *Clear with Computers, LLC v. Dick's Sporting Goods, Inc.*, No. 6:12-cv-00951-LED, 2014 WL 923280, at *3-4, *6-7 (E.D. Tex. Jan. 21, 2014) (Davis, J.) (granting Rule 12(c) motion).

*LLC v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101."). In this case, no read of the claims, whether considered in the light most favorable to O2 Media or otherwise, could save them from being held abstract and thus invalid under § 101. *See Market Track*, 2015 WL 3637740, at *2 (on Rule 12(c) motion, reading claims in the light most favorable to the patent owner and holding them invalid under § 101).

### D.   ALL CLAIMS OF THE ASSERTED PATENTS FAIL THE SUPREME COURT'S PATENT ELIGIBILITY TEST.

The Supreme Court has set forth a two part test to determine if a patent claim is invalid for claiming an abstract idea. First, the court determines whether the claim is directed to an abstract idea or other patent-ineligible concept. *Alice*, 134 S. Ct. at 2355; *Mayo*, 132 S. Ct. at 1296-97. Second, if the claim contains such an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 134 S.Ct. at 2355; *Mayo*, 132 S.Ct at 1294. Absent an inventive concept, a claim containing an abstract idea is invalid as unpatentable subject matter. *Id.* Here, all claims of the Asserted Patents are directed to abstract ideas, and they have no inventive concept to transform them from abstract idea into patentable subject matter.

#### 1.   All claims of the Asserted Patents are directed to the abstract idea of using a template to write stories about selected topics.

To determine if a patent claim is directed to an abstract idea, the court must "identify the purpose of the claim—in other words, determine what the claimed invention is trying to achieve—and ask whether that purpose is abstract." *Enfish, LLC v. Microsoft Corp.*, 56 F. Supp. 3d 1167, 1173 (C.D. Cal. 2014). This inquiry should focus on the purpose of the claims "at a reasonably high level of generality." *Id.*; *Open Text S.A. v. Box, Inc.*, 78 F. Supp. 3d 1043, 1045

(N.D. Cal. 2015). Here, all claims of the Asserted Patents are directed to the abstract idea of using templates to write stories about selected topics. Indeed, each of the Asserted Patents expressly states: "[t]he present invention generally relates to a system, report, and method for automatically generating a series of natural language news-based stories to be presented via a digital interface or printed publication to a portfolio user." ('390 Patent, 2:58-61; '944 and '691 Patents, 3:24-27). The Asserted Patents' claims all specify the stories are generated using templates.

Because humans have long used templates to write stories and other items about selected topics, it is inherently an abstract idea. *See, e.g., Content Extraction*, 776 F.3d at 1347 (holding functions that humans can perform are abstract ideas); *Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011) (same). For example, children in elementary school have long written stories by filling in blanks on templates. This is the same concept as the claimed template in the Asserted Patents where blanks are filled in an existing template to write a story about a selected topic. (*See* '390 Patent, 6:12-16; '944 and '691 Patents, 6:52-56). Similarly, since the 1950s, the popular game of Mad Libs has used templates to write stories. The game consists of a number of templated stories with blanks. Players fill in those blanks, typically before even reading the template, which results in often comical or nonsensical stories.[4]

Likewise, form contract templates often include boilerplate legal terms and conditions with various "blanks" scattered throughout the template. A writer then creates a completed contract draft by inserting specific terms in the blanks that are appropriate in view of the circumstances. *See, e.g., Angle v. NW Mut. Life Ins. Co.*, 92 U.S. 330 (1875) (discussing a fill-in-the-blank form negotiable instrument). In fact, the vast majority of the population purchases

---

[4] Mad Libs is so well known the Supreme Court referred to it in a recent decision and explained how it worked. *See Yates v. United States*, 135 S. Ct. 1074, 1099 (2015) (Kagan, J., dissent).

homes through the use of template real estate contracts in which real estate agents fill in the

blanks. It also is common in many other areas, such as in purchase order forms and even court

pleadings. *See Nabrzeski v. Dillon*, 1994 WL 395101, at *1-2 (N.D. Ill. July 27, 1994)

(discussing the "Complaint Form," which was "a fill-in-the-blank complaint" provided by the

Clerk of the Court for use in Title VII cases). None of these well-known templates is any

different in concept than the template disclosed and claimed in the Asserted Patents.

At bottom, the Asserted Patents' claims are no less abstract than the other concepts the

Supreme Court and Federal Circuit have recently held are abstract ideas. *See, e.g., Alice,* 134 S.

Ct at 2356 (methods and computer systems for providing escrow services held abstract because

they involved a "'fundamental economic practice long prevalent in our system of commerce.'");

*Bilski*, 561 U.S. at 611 (a method for "hedging, or protecting against risk" held abstract because

hedging is "a fundamental economic practice long prevalent in our system of commerce and

taught in any introductory finance class."); *Intellectual Ventures I LLC v. Capital One Bank

(USA)*, 792 F.3d 1363, 1369-70 (Fed. Cir. 2015) (customizing website content as a function of

navigation history and user information is an abstract idea because tailoring information "is

another fundamental practice long prevalent in our system."); *Content Extraction*, 776 F.3d at

1347 (collecting, processing and storing data are "undisputedly well-known" abstract ideas);

*Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (retaining

information in the navigation of online forms is an abstract idea); *Digitech Image Techs., LLC v.

Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1349-50 (Fed. Cir. 2014) (organizing information

through mathematical calculations is an abstract idea); *Cyberfone Sys., LLC v. CNN Interactive

Grp., Inc.*, 558 Fed. Appx. 988, 992 (Fed. Cir. 2014) (using categories to organize, store, and

transmit information is an abstract idea); *see also Dealertrack, Inc. v. Huber*, 674 F.3d 1315,

1317 (Fed. Cir. 2012) (using a clearinghouse to process information is an abstract idea).

Likewise, the Asserted Patents' claims are no less abstract than "the process of identification,

organization, and presentation of stored information in a useful form," which this Court recently

held an abstract idea in *Market Track*. *See* 2015 WL 3637740, *5.

> **2. The independent claims have no inventive concept to make them patent eligible.**

Because each claim of the Asserted Patents recites an abstract idea, the claims are not

patentable unless they also recite an inventive concept "sufficient to ensure that the patent in

practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*,

134 S. Ct. at 2355 (alterations in original). "A claim that recites an abstract idea must include

'additional features' to ensure 'that the [claim] is more than a drafting effort designed to

monopolize the [abstract idea].'" *Id.* at 2357 (alterations in original). "Those 'additional

features' must be more than 'well-understood, routine, conventional activity." *Ultramercial*, 772

F.3d at 715. Here, none of the additional features of the Asserted Claims are anything more than

well-understood, routine, conventional activity.

The additional features fall into the following categories: computers, computer

interfaces, display and central processing units; data selection, data retrieval system and

management tools for data selection; Internet and Internet connections; a news-generating

algorithm, news stories, publication dates, boilerplate sentences repeated in a round-robin

fashion, and a parsing table to vary the boilerplate sentences. Each of these features is addressed

in turn.

First, it is well settled that "the mere recitation of a generic computer cannot transform a

patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358; *see*

*also Ultramercial*, 772 F.3d at 717 ("[A]dding a computer to otherwise conventional steps does

not make an invention patent-eligible. . . . Any transformation from the use of computers or the transfer of content between computers is merely what computers do and does not change the analysis."); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) ("[S]imply implementing an abstract concept on a computer, without meaningful limitations to that concept, does not transform a patent-ineligible claim into a patent-eligible one."). Thus, the computers, computer interfaces, display and central processing units are insufficient as a matter of law to transform an abstract idea into patentable subject matter. The same is true with respect to the data selection, data retrieval system and management tools for data selection in the claims. The Federal Circuit has expressly held that such features are "insignificant 'data-gathering steps' and thus add nothing of practical significance to the underlying abstract idea." *Ultramercial*, 772 F.3d at 716 (citations omitted); *see also Market Track*, 2015 WL 3637740, *8 ("[u]sing a computer to display query results in a preselected format using prepackaged software is not the least bit inventive"). Likewise, claiming the Internet or Internet connections is insufficient as a matter of law to transform an abstract idea into patentable subject matter. *E.g., Ultramercial*, 772. F.3d at 716 ("use of the Internet does not transform an otherwise abstract idea into patentable-eligible subject matter."); *Market Track*, 2015 WL 3637740, *8 (delivery of a file over a computer network or the Internet is not an inventive concept).

The news-generating algorithm does nothing to impart patentability either. It is alleged to be the heart of the invention, but the Asserted Patents provide no explanation of what it is, how to make it, or how it operates. It is described in no more detail than a black box labeled "software" in a single figure of the Asserted Patents. *See* Asserted Patents, Fig. 3. Instead of describing how it works, the Asserted Patents simply state that "[w]hat is contemplated is the use

of a news-generating algorithm with sentence and paragraph reconstruction to simulate natural language." ('390 Patent, 5:35-37; '944 and '691 Patents, 6:8-10). The patents provide only a single exemplary fill-in-the-blank template supposedly used with the news-generating algorithm (*see*, *e.g.*, '390 Patent, 6:12-16), but provide no technical detail on how that template is used, how the blanks are filled in, or how the undisclosed algorithm utilizes the template. Instead, the Asserted Patents simply instruct one to "apply it" (*i.e.*, the abstract idea) on a generic computer with no other explanation.

The Federal Circuit recently held a claimed feature alleged to be the heart of the invention but not described in the patent specification could not serve as the basis for transforming an abstract concept into patentable subject matter. *See Internet Patents*, 790 F.3d at 1348. Indeed, to hold otherwise would "implicate the preemption concerns that animate the *Mayo* test" and undermine the prohibition on patents claiming abstract ideas. *Market Track*, 2015 WL 3637740, *9 (holding no inventive aspect to abstract claim where patent specification did not disclose any technical details on how the claimed process worked). In fact, the Asserted Patents acknowledge they impermissibly seek to preempt the entire abstract idea of using templates to write stories by stating: "[t]his disclosure contemplates all known methods of implementing on a central processor unit 14 as shown in FIG. 3 using software 12 having a method of creating natural language from text that may not be in, for example, full and complete sentences." (*See*, *e.g.*, '691 Patent, 6:43-47). *See Market Track*, 2015 WL 3637740, *7-9.

Finally, the news stories, publication dates, boilerplate sentences, and parsing table to vary the boilerplate sentences add no inventive concept either. First, newspapers have long published news stories with publication dates. This imparts no inventive concept. *E.g., OIP Technologies*, 788 F.3d at 1364; *Content Extraction*, 776 F.3d at 1347-48. The Asserted Patents

acknowledge a human could create boilerplate sentences and vary them, so these features impart no inventive concept either. ('390 Patent, 5:55-60; '944 and '691 Patents, 6:28-34).

In sum, none of the additional features of the independent claims provides the inventive concept necessary to transform them from abstract to patentable. They are all invalid.

### 3. The dependent claims also have no inventive concept to make them patent eligible.

The dependent claims fall into the following categories: data selection and specific categories of data such as investment instruments and travel data; formatting features; use of the Internet or a computer; and merging information, removing irrelevant data or conforming dates. None of these features imparts any inventive concept.

First, as explained above, the Federal Circuit has made clear that data selection features are "insignificant 'data-gathering steps' and thus add nothing of practical significance to the underlying abstract idea." *Ultramercial*, 772 F.3d at 716 (citations omitted).

Second, claim limitations directed to specific categories of data cannot impart any patentability. The Supreme Court has made clear that insignificant pre- or post-solution activity, such as identifying a relevant audience, category of use, field of use, or technological environment, does not impart patentability. *See Mayo*, 132 S. Ct. at 1297-98, 1300-01; *Bilski*, 561 U.S. at 611-12; *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Moreover, these categories of data have long been known and provide no inventive concept. *E.g., OIP Technologies*, 788 F.3d at 1364; *Content Extraction*, 776 F.3d at 1347-48.

Third, the formatting, Internet and computer limitations provide no inventive concept either. As explained above with respect to the independent claims, computers, general computing functions and the Internet are insufficient to provide an inventive concept. *E.g.,*

*Alice*, 134 S. Ct. at 2357-58; *Accenture Global Servs.*, 728 F.3d at 1345; *Ultramercial*, 772 F.3d at 716-17; *Market Track*, 2015 WL 3637740, *8.

Finally, the category of merging information, removing irrelevant information and conforming dates are routine conventional activities that the Asserted Patents acknowledge a human can perform. ('390 Patent, 5:55-60; '944 and '691 Patents, 6:28-34). They do not provide an inventive concept. *E.g., OIP Technologies*, 788 F.3d at 1364; *Content Extraction*, 776 F.3d at 1347-84; *Ultramercial*, 772 F.3d at 715.

Because all of the claims of the Asserted Patents are abstract with no inventive concept, they are unpatentable subject matter. Count 1 should therefore be dismissed with prejudice.

**E.      O2 MEDIA'S STATE LAW COUNT ALSO FAILS TO STATE A CLAIM AND IS PREEMPTED.**

O2 Media's First Amended Complaint also alleges a claim under the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"). Specifically, O2 Media alleges:

> Defendant has actual notice of the Patents-in-Suit owned by Plaintiff, but nevertheless advertises, offers, generates and sells a software which it knows its clients believe is legal and does not infringe any third-party rights. Those in the industry who know of Plaintiff and its patented methods, customers and/or third parties may be misled into thinking that Defendant's Quill software is produced under a valid license or does not infringe Plaintiff's technology, all in violation of Section 2 of the UDTPA.

First. Am. Compl. (D.I. 8) ¶ 28.

Thus, taking O2 Media's allegations as true for purposes of this motion (*see* Rule 12(b)(6)), the sole basis of its UDTPA count is Narrative Science's alleged infringement of the Asserted Patents. But it is hornbook law that if a patent is invalid, there can be no liability for infringement and there would be no need for a license. *See Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1929 (2015) ("[I]f the patent is indeed invalid, and shown to be so under proper procedures, there is no liability. That is because invalidity . . . is a defense to liability."

(citation omitted)). Because the Asserted Patents are invalid as claiming an unpatentable abstract idea, Narrative Science does not need a license, and thus there can be no actionable infringement.[5] Accordingly, O2 Media's UDTPA count fails to state a claim for which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). It thus should be dismissed with prejudice.

Any other conclusion would violate the Supremacy Clause. It is well settled that "the states may not offer patent-like protection to intellectual creations that would otherwise remain unprotected as a matter of federal law." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 156 (1989). In a seminal case holding a Florida state statute preempted by the federal patent laws, the Supreme Court held: "By offering patent-like protection for ideas deemed unprotected under the present federal scheme, the Florida statute conflicts with the 'strong federal policy favoring free competition in ideas which do not merit patent protection.'" *Id.* at 168 (citations omitted). That is the exact issue presented here – O2 Media's state law count seeks relief for Narrative Science's alleged use of technology that is deemed patent ineligible. That type of claim is expressly preempted and should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

## IV. CONCLUSION

Because each claim of the Asserted Patents is directed to unpatentable subject matter, Count 1 of O2 Media's First Amended Complaint fails to state a claim upon which relief can be granted. In addition, because Count 2 of O2 Media's First Amended Complaint is preempted by the federal patent laws, it also fails to state a claim upon which relief can be granted. Because these deficiencies in the First Amended Complaint cannot be cured, O2 Media's First Amended Complaint should be dismissed with prejudice.

---

[5] To be clear, Narrative Science does not infringe any claim of any Asserted Patent. Narrative Science is merely treating O2 Media's allegations as required under the Rule 12(b)(6) standard.

Dated: September 22, 2015          Respectfully submitted,

                                      THOMPSON COBURN LLP

                                      By _/s/ Michael A. Parks_
                                         Michael A. Parks (#6217230)
                                         mparks@thompsoncoburn.com
                                         Anthony F. Blum (#6298243)
                                         ablum@thompsoncoburn.com
                                         Nathan P. Sportel (#6304061)
                                         nsportel@thompsoncoburn.com
                                         THOMPSON COBURN LLP
                                         55 East Monroe Street
                                         Chicago, Illinois 60603
                                         (312) 346-7500
                                         (312) 580-2201 (fax)

                                      *Attorneys for Defendant Narrative Science Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 22nd day of September, 2015.

                                        /s/ *Michael A. Parks*
                                        Michael A. Parks

16